IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROBYN FILES, CELENA APPLE,
SCOTT ARANT, DEBORAH ARANT,
KATHY FORTE, ROBERT KADOORI,
KIMBERLY KIRKLAND, KEREN
LACHOVER, BEN MARKS, MARGO
MARKS, BRADLEY ROSEN, MEREDITH
ROSEN, and NORMA SHOHET,
individually and on behalf of
their minor children,

      Plaintiffs,

                                 CIVIL ACTION NO.

v.                                  1:11-cv-1798-JEC

DEKALB COUNTY SCHOOL DISTRICT,
RAMONA TYSON, individually and
in her official capacity as
Superintendent of the DeKalb
County School District, and
NANCY JESTER, individually and
in her official capacity as a
member of the DeKalb County
Board of Education,

      Defendants.

**ORDER & OPINION**

This case is presently before the Court on defendants' Motion to Dismiss [3]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss [3] should be **GRANTED**.

**BACKGROUND**

This lawsuit arises out of a redistricting plan proposed for the five elementary schools that serve the Dunwoody community in DeKalb County, Georgia. (Compl. [1] at ¶ 1.) The challenged plan was prepared by the DeKalb County School District (the "School District"). (*Id.*) It was approved by the DeKalb County Board of Education (the "BOE") based upon the endorsement of DeKalb County Superintendent Ramona Tyson and the advocacy of District One BOE member Nancy Jester. (*Id.* at ¶¶ 1, 18.) According to plaintiffs, the plan was intended to eliminate racial minorities from certain schools, specifically Austin and Vanderlyn, and concentrate minority students at Dunwoody Elementary. (*Id.* at ¶ 1.)

Plaintiffs are the parents of children enrolled in schools impacted by the redistricting plan. (*Id.* at ¶ 4.) They claim that the plan makes race a predominating factor in the assignment of students to public schools, in violation of the Fourteenth Amendment to the United States Constitution. (Compl. [1] at ¶ 23.) Based on the alleged constitutional violation, plaintiffs assert a § 1983 claim against defendants in Count I of their complaint. (*Id.* at ¶¶ 22-23.) In Count II, plaintiffs assert a state law claim for breach of an implied contract. (*Id.* at ¶¶ 25-27.)

Defendants have filed a motion to dismiss both counts of the complaint pursuant to Federal Rule 12(b)(6). (Defs.' Mot. to Dismiss

[3].)  In support of their motion, defendants argue that plaintiffs do not adequately plead either discriminatory intent by the School District or causation sufficient to support a § 1983 claim.  (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") [3] at 2.)  As to the contract claim, defendants contend that plaintiffs do not allege the necessary elements of consideration and detrimental reliance.  (*Id.* at 2, 15.)  Defendants further assert that the BOE is entitled to sovereign immunity on the contract claim.  (*Id.* at 2, 15.)

## **DISCUSSION**

### **I.   Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Federal Rule 12(b)(6), the Court assumes that all of the allegations in the complaint are true and construes all of the facts in favor of the plaintiff.  *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010).  That said, in order to survive a motion to dismiss a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facially plausible" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

3

**II.   Section 1983**

In order to prevail on their § 1983 claim, plaintiffs must show that defendants (1) deprived plaintiffs of a constitutional right, (2) under color of state law. *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635 (1980)). There is no *respondeat superior* or vicarious liability under § 1983. *Griffin v. City of Opa-Locka,* 261 F.3d 1295, 1307 (11th Cir. 2001)(citing *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 663 (1978)). Thus, a municipality is only liable under § 1983 for constitutional deprivations that are caused by a governmental policy or custom. *Id.* Likewise, an individual defendant is only liable if there is a causal connection between the defendant's unlawful actions and the alleged deprivation. *Dixon v. Burke Cnty.,* 303 F.3d 1271, 1275 (11th Cir. 2002)("[w]ithout causation, [a] § 1983 case fails as a matter of law").

Plaintiffs claim that the challenged redistricting plan deprives them of rights granted by the Equal Protection Clause of the Fourteenth Amendment. (Compl. [1] at ¶ 23.) The Equal Protection Clause provides that:  "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. As such, the Clause prohibits states from discriminating against individuals on the basis of race. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1189-90 (11th Cir. 1999). In

4

particular, the Clause generally forbids a municipality from relying on racial classifications to assign students to primary and secondary public schools. *See Parents Involved In Cmty. Sch. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 730 (2007)("'[a]t the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial . . . class'")(quoting *Miller v. Johnson*, 515 U.S. 900, 911 (1995)).

Defendants do not dispute that the challenged redistricting plan was proposed and enacted under color of state law. (Defs.' Br. [3] and Reply [9].)  However, they contend that plaintiffs fail to allege any basis for inferring racial discrimination by the School District or for imposing § 1983 liability as a result of a District custom or policy. (Defs.' Br. [3] at 4-7, 10-12.)  In addition, defendants argue that there is no causal connection between defendant Jester's alleged discriminatory motive in proposing the plan and the constitutional deprivation that plaintiffs allegedly suffered. (*Id.* at 7-10.)

**A.   The School District**

The Court agrees that there is no basis in the complaint for holding the School District liable under § 1983.  The redistricting plan allegedly was conceived and championed by District One BOE

5

member Jester.[1]  (Compl. [1] at ¶ 1.)  Notwithstanding Jester's advocacy and support, the plan could not be implemented until it was adopted by the DeKalb County BOE.  (*Id*.)  The BOE approved the plan by a 7 to 2 vote.[2]  (Defs.' Br. [3] at 8.)  Plaintiffs do not allege any discriminatory motive on the part of the BOE as a whole, or on the part of any individual BOE member except Jester.

In fact, the allegations suggest that Jester was solely responsible for the discriminatory nature of the plan.  (Compl. [1] at ¶¶ 1, 8-20.)  Plaintiffs claim that Jester advocated the plan in an attempt to benefit personal friends and key political supporters whose children and grandchildren live in the Austin attendance zone, and who wanted minorities removed from Austin.  (*Id.* at ¶ 1.)  Plaintiffs allege no facts to indicate that the other BOE members shared or even were aware of Jester's discriminatory intent.  Indeed, plaintiffs claim that Jester misrepresented the level of parental support for the redistricting plan in an effort to obtain the BOE's approval.  (*Id*. at ¶ 15.)

---

[1]  To emphasize Jester's role in creating the plan, plaintiffs refer to the plan as the "Jester Plan."  (Pls.' Resp. [6] at 6.)

[2]  The Court takes judicial notice of the margin of the BOE's vote, which is a matter of public record.  *See Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1260 n.2 (11th Cir. 2006)("public records [are] capable of being judicially noticed at the motion to dismiss stage.").

6

Neither do plaintiffs allege any BOE or School District custom or policy that might have contributed to the discrimination. There are three ways to show a governmental policy or custom: (1) an express policy, (2) a widespread practice that is so permanent and well-settled as to constitute a custom, or (3) the act or decision of a municipal official with final policy-making authority. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.,* 285 F.3d 962, 966-68 (11th Cir. 2002). In order to establish § 1983 liability, it is not sufficient for a municipal custom or policy to be "tangentially related to a constitutional deprivation." *Id.* at 967. Instead, "the 'official policy must be the moving force of the constitutional violation.'" *Id.* (citing *Gilmere v. City of Atlanta,* 737 F.2d 894, 901 (11th Cir. 1984)).

Based on the allegations in the complaint, the District's stated policy goals included only non-racial redistricting principles such as balancing enrollment and achieving optimal geographic proximity. (Compl. [1] at ¶ 1.) Thus, the District's express policy did not violate the Equal Protection Clause. Moreover, there are no facts in the complaint to suggest that the BOE or the School District had a wide-spread or well-settled practice of considering race in the redistricting process. Nor can it reasonably be inferred that Jester had final policy-making authority, as plaintiffs concede that the

AO 72A
(Rev.8/82)

redistricting plan could only be implemented upon its approval by the nine-member BOE. (*Id.* and Defs.' Br. [3] at 8.)

Plaintiffs nevertheless argue that the School District can be held liable under § 1983 because the District (1) approved a redistricting plan that had the effect of concentrating minorities in one school and (2) rejected an alternative plan that was consistent with its redistricting goals while at the same time resulting in more integrated schools. (Pls.' Resp. [6] at 12.) This argument is unpersuasive. The Equal Protection Clause does not require the District to maintain racial diversity in its elementary schools. *See Parents Involved,* 551 U.S. at 732 ("Even in the context of mandatory desegregation, we have stressed that racial proportionality is not required.") and *Milliken v. Bradley,* 433 U.S. 267, 281 n.14 (1977)("the Court has consistently held that the Constitution is not violated by racial imbalance in the schools, without more"). On the contrary, as a general rule, the Equal Protection Clause forbids the District from relying on racial classifications even when they are used to foster diversity. *Parents Involved,* 551 U.S. at 732.

Plaintiffs alternatively suggest that the School District can be held liable on a "cat's paw" theory, as a result of its practice of deferring to the BOE member who represents the schools effected by a proposed redistricting plan, in this case Jester. (Pls.' Resp. [6] at 12-14.) The BOE apparently did not exercise complete deference in

8

this case, as two members voted against the plan.  In any case, the cat's paw theory does not apply in the § 1983 context.  As discussed above, there is no *respondeat superior* or vicarious liability under § 1983.  *Griffin,* 261 F.3d at 1307.  In accordance with that principle, the Eleventh Circuit has expressly rejected the argument, advanced by plaintiffs, that one BOE member's motive can be imputed to the entire BOE.  *See Campbell v. Rainbow City,* 434 F.3d 1306, 1313 (11th Cir. 2006)("An improper motive of one of the members of a nine-member Planning Commission is not imputed to the rest of the Commission.") and *Mason v. Vill. of El Portal,* 240 F.3d 1337, 1340 (11th Cir. 2001)("there can be no municipal liability unless all three members of the council who voted against reappointing Plaintiff shared the illegal motive").

In short, even assuming that the allegations in the complaint are true, there is no plausible basis for imposing § 1983 liability on the School District.  Plaintiffs fail to allege any discriminatory motive or action on the part of the District or the BOE as a whole. And the District cannot, as a matter of law, be held accountable under § 1983 for the discriminatory actions of BOE member Jester. Accordingly, the Court **GRANTS** the School District's motion to dismiss Count I of the complaint.[3]

---

[3] The Court's analysis applies both to the School District and to the individuals sued in their official capacity.  *See Busby v.*

**B.     The Individual Defendants**

    1.     Ramona Tyson

As with the School District, there are no allegations in the complaint to suggest that defendant Tyson was complicit in Jester's racially motivated plan. Indeed, the only asserted basis for Tyson's liability is that, in her role as Superintendent for the DeKalb County Schools, she presented the plan to the BOE for a vote. (Compl. [1] at ¶¶ 6, 18.) Tyson's position as Superintendent during the redistricting process is not in itself sufficient to infer racial discrimination or to hold her liable under § 1983. *See Holloman v. Harland,* 370 F.3d 1252, 1263 (11th Cir. 2004) (explaining that an individual is generally only liable under § 1983 for his own personal actions).[4] The Court thus **GRANTS** defendant Tyson's motion to dismiss Count I of the complaint.

    2.     Nancy Jester

The allegations concerning defendant Nancy Jester are more

---

*City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991)("when an officer is sued . . . in his or her official capacity, the suit is simply another way of pleading an action against . . . the city that the officer represents")(internal quotations omitted).

[4] Under certain limited circumstances an individual may be held liable on a supervisory theory for the actions of his subordinates. *Holloman,* 370 F.3d at 1263. However, plaintiffs do not allege any facts that would give rise to supervisory liability in this case. *Id. See also Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990)(discussing the basis of supervisory liability under § 1983).

specific.  As mentioned, Jester is the BOE member who represents the schools that were impacted by the redistricting plan.  (Compl. [1] at ¶ 7.)  According to plaintiffs, Jester was the principal architect and advocate of the plan.  (*Id*. at ¶¶ 1, 11-19.)  She developed the plan with the specific intent of removing minorities from certain schools in order to appease her personal friends and political supporters.  (*Id*. at ¶¶ 1, 19.)  She then obtained passage of the plan by manipulating and misleading the Superintendent and other BOE members.  (*Id*. at ¶¶ 15-20.)

Assuming the above allegations are true, Jester unlawfully injected race into her own decision-making process.  *Parents Involved,* 551 U.S. at 730.  The question that remains is whether Jester's racially-based motivations for championing a particular plan "caused" the constitutional deprivation allegedly suffered by plaintiffs.  *See Dixon v. Burke Cnty.,* 303 F.3d 1271, 1275 (11th Cir. 2002)(a causal connection between the wrongful act and the constitutional deprivation is an essential element of any § 1983 claim).  Jester did not have the authority to implement the plan without the approval of the BOE.  Under similar circumstances, the Eleventh Circuit has held that causation does not exist "when the continuum between [a] Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."  *Id*.

11

Plaintiffs do not address *Dixon,* which is materially indistinguishable from the facts of this case.  The plaintiff in *Dixon* sued Burke County, its district attorney, and a grand juror under § 1983 as a result of the grand jury's allegedly discriminatory vote to fill a vacancy on the county school board.  Prior to the vote, the district attorney and one of the jurors expressly recommended the selection of a white male for the position.  The grand jury adhered to that recommendation.  However, because the entire jury voted on the candidate's selection, the Eleventh Circuit held that any causal connection between the alleged discriminatory actions and the constitutional violation was "severed by the intervening free, independent, and volitional acts of the [g]rand [j]ury." *Id.*

The principle announced in *Dixon* applies with equal force here. Given the BOE's intervening vote, a § 1983 claim based on the allegation that Jester individually deprived plaintiffs of their constitutional rights is implausible on its face. *Id.* and *Twombly,* 550 U.S. at 570.  Accordingly, the Court **GRANTS** defendant Jester's motion to dismiss Count I of the complaint.

### III. Breach Of Contract

In Count II of the complaint, plaintiffs assert a state law claim for breach of an implied contract.  (Compl. [1] at ¶¶ 24-27.) The contract that is the basis for this claim allegedly arose from

12

the School District's representations that the redistricting process would be driven by non-racial considerations. (*Id*. at ¶ 25.) Defendants argue that the contract claim should be dismissed because: (1) school districts have sovereign immunity against claims for breach of implied contract and (2) plaintiffs have not pled the necessary elements of a contract between themselves and any defendant in this case. (Defs.' Br. [3] at 14-16.)

Plaintiffs do not respond to the above arguments. The Court thus finds that plaintiffs have abandoned their breach of contract claim. *See Adams v. Unum Life Ins. Co. of Am.,* 508 F. Supp. 2d 1302, 1318 (N.D. Ga. 2007)(Murphy, J.)(failure to respond to a defendant's arguments on a particular claim constitutes abandonment of that claim). Accordingly, the Court **GRANTS** defendants' motion to dismiss Count II of the complaint as unopposed. *See* LR 7.1(B), NDGa (failure to respond to a motion indicates lack of opposition) and *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004)(Duffey, J.)("Failure to respond to the opposing party's summary judgment arguments . . . warrants the entry of summary judgment").

The Court also notes that defendants' arguments as to the breach of contract claim are persuasive on the merits. The complaint does not contain allegations that plausibly support the existence of a contract between plaintiffs and either the School District or the individual defendants. *See Eastview Healthcare, LLC v. Synertx,*

13

*Inc.,* 296 Ga. App. 393, 398 (2009)(plaintiffs have "the burden of pleading . . . a valid contract").[5] In particular, plaintiffs do not adequately plead consideration, an essential element of a breach of contract claim. *Id.* at 399. *See also* O.C.G.A. § 13-3-40 (a contract without consideration is unenforceable). Moreover, the School District clearly is immune from liability on a claim for breach of implied contract. *See Merk v. DeKalb Cnty.,* 226 Ga. App. 191, 192 (1997)("an implied contract will not support a waiver of sovereign immunity under the provisions of the Georgia Constitution"). For these additional reasons, the Court dismisses the claim asserted in Count II of the complaint.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' Motion to Dismiss [3].

SO ORDERED, this <u>2nd</u> day of MARCH, 2012.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] The parties agree that Count II is governed by Georgia law. (Defs.' Br. [3] at 15 and Pl.'s Resp. [6].)